UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARGARET EMILY MOSS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:10-cv-1659-M |
| | § | |
| LOCKHEED MARTIN CORPORATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Lockheed Martin Corporation's Motion to Transfer Venue [Docket Entry #6]. For the reasons stated below, the Motion is **DENIED**.

## Background

Plaintiff Emily Moss filed this suit against her former employer, Defendant Lockheed Martin Corporation, alleging violations of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2, and the Equal Pay Act, 29 U.S.C. § 206(d). Plaintiff alleges she was employed by Defendant for over forty years and that she was a Director of Government Relations in Defendant's aeronautics division from May 2003 until January 28, 2009.[1] Plaintiff claims that Brian Johnstone, alleged to also hold the position of Director of Government Relations, was for several years paid approximately $56,000 a year more than Plaintiff.[2] Plaintiff is a resident of Fort Worth, Texas, and at all relevant times officed at Defendant's manufacturing facility in Fort Worth.[3] Johnstone

---

[1] Defendant denies that Plaintiff was a Director of Government Relations and states that she held the position of "level four Government Relations Representative Staff." (Def.'s Mot. 2 n.6.)
[2] Although Plaintiff's Complaint alleges she and Johnstone held the position of Director of Government*al* Relations, in an affidavit attached to her Response Brief, she avers that they both held the title Director of Government Relations. For purposes of consistency only, the Court uses the term Director of Government Relations in this Opinion.
[3] The exact address of the facility is 1 Lockheed Boulevard, Fort Worth, Texas 76108. Although Plaintiff has not

works out of Defendant's facility in Marietta, Georgia, where he resides.

Defendant moves for a transfer of venue to the Fort Worth Division of the Northern District of Texas pursuant to 28 U.S.C. § 1404(a), asserting that such a transfer would be more convenient for the parties and witnesses, and would serve the interests of justice. Defendant claims that two of its employees and potential witnesses, Eric Fox and Mike Hester, live in the Fort Worth Division. Defendant states that Fox, who at one time was Plaintiff and Johnstone's supervisor, lives and works in Fort Worth and that Hester, who is Defendant's "Senior Manager Human Resources," resides in Tarrant County, and works at the same facility in Fort Worth where Plaintiff officed. Defendant further asserts that any relevant documents located in the Northern District, including the personnel records related to Johnstone's and Moss's compensation, job duties, and work history, are located at Defendant's Fort Worth facility. Finally, Defendant urges that the actions about which Plaintiff complains allegedly took place in the Fort Worth Division.

Plaintiff responds that her primary responsibility as Director of Government Relations was to develop and maintain relationships with key senators, congresspersons, congressional staffs, and business leaders, and that, in performing these duties, she spent much of her time in Dallas, Austin, and Washington, D.C., and developed good professional relationships with several congresspersons and their staffs who live in and represent areas within the Dallas Division. Plaintiff claims that these congresspersons and staff members could testify as to her competence in the position of Director of Government Relations. Plaintiff further alleges that it was her responsibility to serve as "point person" for Defendant with the Dallas Chamber of Commerce, which required her to arrange and attend "meet and greets" for federal and state

---

provided her address in her Complaint or briefing, her last pay stub, which she attached as an exhibit to her Response to Defendant's Motion, shows her address as 2325 Medford Ct. E, Fort Worth, TX 76109.

elected officials. Additionally, Plaintiff asserts that documents relevant to her claims are in the possession of the Dallas Regional Office of the Equal Employment Opportunity Commission ("EEOC"), and that the payroll documents relevant to her claim were generated from Defendant's office in Lakeland, Florida.

Pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of the following facts: (1) the distance between Defendant's Fort Worth facility and the federal courthouse in Fort Worth is 9.2 miles, with an approximate travel time of 12 minutes; (2) the distance between Defendant's Fort Worth facility and the Dallas federal courthouse is 40.9 miles, with an approximate travel time of 45 minutes; (3) the distance between the federal courthouses in Dallas and Fort Worth is 32 miles, with an approximate travel time of 35 minutes; (4) some areas in east Fort Worth are closer to the Dallas courthouse than to the Fort Worth courthouse; (5) the distances between the Dallas courthouse and DFW International Airport and Dallas Love Field Airport are 20.8 and 6.9 miles, respectively; and (6) the distances between the Fort Worth courthouse and DFW International Airport and Dallas Love Field Airport are 24.6 and 33.8 miles, respectively.[4]

**Legal Standard**

A district court may transfer a civil case "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2006). The parties agree that this case could have been brought in the Fort Worth Division; therefore, the only issue to be determined is whether the "convenience of the

---

[4] Defendant requested the Court to take judicial notice of the first three of these facts, which could be determined from the website maps.com. Plaintiff did not object to the use of maps.com, and similar websites have been used in this circuit to take judicial notice of geographical distances. *Knapper v. Kleen Sys., Inc.*, No. 9:08-cv-84-TH, 2009 WL 909479, at *6 n.5 (E.D. Tex. Apr. 3, 2009) (Heartfield, J.). Neither party requested the Court to take notice of the fourth, fifth, or sixth facts, but the Court finds it necessary for determination of this case and may take notice of such facts in its discretion. Fed. R. Evid. 201(c). The fourth noticed fact was derived from combining information from maps.com and the City of Fort Worth's Geographic Information Systems website, maps.fortworthgov.org. The fifth and sixth facts were derived solely from maps.com.

parties and witnesses, in the interest of justice" requires a transfer to the Fort Worth Division. *See In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003). In making this determination, the Court must consider a number of private and public interest factors. *In re Volkswagen Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc). The private interest factors are (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Id.* at 315. The public interest factors are (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.* Though appropriate for most transfer cases, these public and private interest factors are not necessarily exhaustive or exclusive, and no single factor is dispositive. *In re Volkswagen*, 545 F.3d at 315.

Though not properly considered as an independent factor in the analysis, the plaintiff's choice of venue is entitled to deference. *In re Volkswagen*, 545 F.3d at 515. Thus, a defendant seeking transfer must show good cause for the transfer. *Id.* "The burden on the movant is 'significant,' and for a transfer to be granted, the transferee venue must be 'clearly more convenient than the venue chosen by the plaintiff.'" *AT&T Intellectual Prop. I, L.P. v. Airbiquity Inc.*, No. 3:08-cv-1637-M, 2009 WL 774350, at *1 (N.D. Tex. Mar. 24, 2009) (Lynn, J.) (quoting *In re Volkswagen*, 545 F.3d at 315).

**Analysis**

A.  Private Interest Factors

The Defendant concedes, and the Court agrees, that the second private interest factor—

the availability of compulsory process to secure witness attendance—is inapplicable in this case. Likewise, neither party makes an argument based on the fourth factor—all other practical problems that make trial of a case easy, expeditious, and inexpensive—and the Court concludes that no such practical problems exist. Therefore, the second and fourth private interest factors are neutral, and the Court only examines the first and third.

        1.       First Private Interest Factor: Relative Ease of Access to Proof

The first private interest factor is the relative ease of access to sources of proof in each venue. Due to increasing technological advances, access to some sources of proof presents a lesser inconvenience than it once did; however, the fact that technology reduces the inconvenience does not render this factor superfluous. *In re Volkswagen*, 545 F.3d at 316; *accord Ternium Int'l U.S.A. Corp. v. Consolidated Sys., Inc.*, No. 3:08-cv-816-G, 2009 WL 464953, at *3 (N.D. Tex. Feb. 24, 2009) (Fish, J.).

Here, where the parties identify only documentary evidence, the ease of access to such evidence is not significantly different whether the case is tried in Dallas or Fort Worth. First, Defendant provides no factual or legal basis for its argument that these documents will be more easily accessed in discovery if the case is tried in Fort Worth rather than Dallas. In fact, in responding to Plaintiff's contention that the Dallas EEOC possesses relevant documents, Defendant argues that "[i]f either party subpoenas documents from the EEOC, the documents will be produced to the attorney requesting the documents and forwarded or made available to the requesting party in Tarrant County, and not directly to [the] Court." (Def.'s Reply 5.) The same reasoning would seem to apply to Defendant's employment records produced to Plaintiff during discovery. Whether this case is tried in Dallas or Fort Worth, discovery is conducted between the parties; the location of the courthouse where the case is set to be tried is, in this case,

of no consequence. Furthermore, to the extent that the parties do file papers with the court, required electronic filing throughout the Northern District of Texas eliminates any difference in the ease of access to those documents.[5]

Second, that Defendant's Fort Worth facility is closer to the Fort Worth courthouse will likely have no practical effect on the ease of access to documentary evidence at trial. Defendant argues that the documents "are more easily transferred from [Defendant's Fort Worth facility] to the Fort Worth federal courthouse than the Dallas federal courthouse to the extent they are used at trial." (Def.'s Reply 5.) This argument assumes, of course, that Defendant will be transferring documents directly from Defendant's Fort Worth facility to the courthouse. Defendant has presented no argument or evidence as to why such a practice would be employed in this case. Almost certainly, whatever documentary evidence Defendant intends to introduce at trial will be in the possession of Defendant's counsel in advance of the trial date. Thus, the proximity of Defendant's facility to the Fort Worth courthouse does not increase the ease of access to these documents during trial.

Citing *In re Horseshoe Entertainment*, 337 F.3d 429, 434 (5th Cir. 2003), Defendant argues that the Fifth Circuit "expressly rejected" the approach of "downplaying" the ease-of-access-to-proof factor due to "modern technological advances and the normal practices of litigation." (Def.'s Mot. 6 n.27.) The Court does not "downplay" this factor simply by recognizing the fact that modern information technology has, in fact, increased the ease with which litigants and courts may access certain sources of proof, particularly documents. The Court could no more ignore the fact that in the modern era documents, photographs, and videos can be sent across the country with the click of a button than it could ignore the degree to which

---

[5] Local Civil Rule 5.1(e) ("Unless the presiding judge otherwise directs, an attorney—other than a prisoner pro se party—must file any pleading (except a complaint), motion, or other paper by electronic means . . . .").

the jet aircraft and the interstate highway system have facilitated the rapid movement of people. To hold otherwise would transform this factor from one focused on the ease with which evidence may be accessed, to one focused strictly on the geographical location of proof.[6]

To the extent Defendant interprets *In re Horseshoe* to impose such a strict location-centric requirement, the Court does not read that case's holding so broadly. In *In re Horseshoe*, the Fifth Circuit reversed the District Court for the Middle District of Louisiana's decision not to transfer venue to the Western District of Louisiana. The plaintiff claimed discrimination under Title VII and the ADA, which are subject to the following special venue provisions:

> Such an action may be brought in any judicial *district* in the State in which the unlawful employment practice is alleged to have been committed, in the judicial *district* in which the employment records relevant to such practice are maintained and administered, or in the judicial *district* in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such *district*, such an action may be brought within the judicial *district* in which the respondent has his principal office.

42 U.S.C. § 2000e-5(f)(3) (emphasis added).

The Fifth Circuit found error in the district court's holding that "'the factor regarding the location of books and records [was not] significant in the case because the implements of modern electronic imaging and document transfer and retrieval will greatly reduce, if not eliminate any inconvenience to the parties in this regard.'" *In re Horseshoe*, 337 F.3d at 434. The Fifth Circuit held, "Where relevant employment records are maintained and administered is expressly stated

---

[6] This is not to say that the location of sources of proof is irrelevant. The physical location of evidence is of great importance where the evidence is immovable or not easily transferred. *See In re Volkswagen*, 545 F.3d at 316 (finding the factor to weigh in favor of transfer where "[a]ll of the documents *and physical evidence* relating to the [car] accident are located in the [transferor court], *as is the collision site*" (emphasis added)). No claim is made here that there is fixed physical or difficult-to-move evidence in Fort Worth, or that the documents are voluminous.

as a venue factor in the special venue statute and should be weighed by a District Court in evaluating the 'interest of justice' aspect of the motion to transfer." *Id.*

The Court reads *In re Horseshoe* to require at most that district courts considering a motion to transfer a Title VII suit to another judicial *district* should evaluate the other possible *districts* in which the suit could have been brought under the special venue statute. Where, as here, a Title VII defendant seeks an intradistrict transfer to another division, whether the plaintiff could have originally filed his claim in another *district* is of no import.

Having found that transferring this case to the Fort Worth Division would cause no appreciable difference in the ease of access to the documentary evidence in Defendant's possession, the Court holds that this factor does not weigh in favor of transfer and is, therefore, neutral.

    2.   Third Private Interest Factor: Cost of Attendance of Willing Witnesses

The third of the four private interest factors the Court considers is the cost of attendance of willing witnesses. The convenience of the witnesses is often regarded as the most important factor to be considered in deciding whether to transfer venue. *AT&T Intellectual Prop. I L.P. v. Airbiquity Inc.*, No. 3:08-cv-1637-M, 2009 WL 774350, at *5 (N.D. Tex. Mar. 24, 2009) (Lynn, J.); *Ternium Int'l U.S.A. Corp. v. Consol. Sys., Inc.*, 3:08-cv-816-G, 2009 WL 464953, at *4 (N.D. Tex. Feb. 24, 2009) (Fish, J.). However, it is the convenience of the non-party witnesses that is accorded the greatest weight. *AT&T Intellectual Prop.*, 2009 WL 774350, at *5. The convenience of the witnesses who are employees of the party seeking transfer is entitled to less weight because that party will be able to compel their testimony at trial. *Ternium*, 2009 WL 464953, at *4; *accord AT&T Intellectual Prop.*, 2009 WL 774350, at *5.

In its Motion, Defendant identifies four potential witnesses: (1) Plaintiff, who resides in

Fort Worth; (2) Eric Fox, who was Plaintiff's and Johnstone's one-time supervisor, and who lives and works in Fort Worth; (3) Eric Hester, who resides in Tarrant County and works at the Fort Worth facility where Plaintiff officed; and (4) Brian Johnstone, who works in Marietta, Georgia. Defendant argues that Plaintiff, Fox, and Hester would incur greater costs if this case remained in Dallas than if it were transferred to Fort Worth.

Of the witnesses identified by Defendant, only Plaintiff and Hester would necessarily incur greater cost if this case were tried in Dallas, and Plaintiff is obviously unconcerned with her costs of travel to Dallas. Because trials are held during standard work hours, Hester would presumably already be at work at Defendant's Fort Worth facility on the days of trial. *See Hovanas v. Am. Eagle Airlines*, No. 3:09-cv-209-B, 2009 WL 980111, at *3 (N.D. Tex. Apr. 8, 2009) (Lynn, J.). Defendant's Fort Worth facility is closer to the Fort Worth courthouse, and thus Hester would incur lower costs traveling there than to the Dallas courthouse. Likewise, Plaintiff's residence in Fort Worth is closer to the Fort Worth courthouse.

However, Defendant has not demonstrated that Eric Fox's Fort Worth residence or workplace is closer to the Fort Worth courthouse. Although Defendant states that Fox "works and resides in Fort Worth," Defendant does not provide the address of either his residence or his workplace.[7] (Def.'s Mot. 7.) Portions of the city of Fort Worth are closer to the Dallas courthouse than to the Fort Worth courthouse; thus, Fox's residing and working in Fort Worth does not necessarily mean that his residence or workplace is closer to the Fort Worth courthouse.

Furthermore, transferring this case to Fort Worth would actually increase the cost of Mr. Johnstone's attendance. Traveling from Marietta, Georgia, Johnstone would presumably fly into one of the Dallas-Fort Worth area's two major airports, both of which are closer to the Dallas

---

[7] In contrast to Defendant's explicit statement that Hester works at the Fort Worth facility where Plaintiff officed, Defendant does not identify where in Fort Worth Fox works.

courthouse than the Fort Worth courthouse.

Finally, Plaintiff identifies several congresspersons and congressional staff members who reside in or represent Dallas and who Plaintiff alleges could testify as to her competence in performing her most recent duties for Defendant. Defendant argues that these congresspersons will not be able to compare and contrast Plaintiff's competence and job duties with those of Brian Johnstone, and do not have any knowledge about her rate of pay or the reasons for that rate of pay. Therefore, Defendant argues, their testimony will be of limited probative value. However, Plaintiff is not required to prove her entire case with the testimony of one witness. For instance, one witness could describe Plaintiff's job performance, another could describe Johnstone's, yet another could testify as to their respective rates of pay, and so on. Defendant does not dispute that the congresspersons and staff members will be able to testify as to Plaintiff's competence in performing her job, nor does Defendant dispute that attendance in Dallas will be less costly for these potential witnesses than in Fort Worth. Thus, the Court will not ignore the cost of their attendance, and finds that those costs would be greater if this case was tried in Fort Worth.

A transfer to Fort Worth would likely reduce the cost of Plaintiff's and Hester's attendance at trial, and would slightly increase the cost of attendance for Johnstone and the congresspersons and staff identified in Plaintiff's Response. In light of the diminished weight given to the cost of attendance for party witnesses, the Court finds that this factor weighs against transfer.

B.  Public Interest Factors

In its Motion, Defendant states that the first, third, and fourth public interest factors do not apply in this case, and the Plaintiff does not dispute this. The Court agrees, and considers

these factors neutral.  Thus, the only disputed public interest factor is the second: the local interest in having localized interests decided at home.  "This factor is based on the premise that jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."  *Ternium Int'l U.S.A. Corp. v. Consol. Sys., Inc.*, No. 3:08-cv-816-G, 2009 WL 464953, at *5 (N.D. Tex. Feb. 24, 2009) (Fish, J.) (citing *Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 508–09 (1947)) (other citations omitted).

Here, the residences of both parties, and the facility where Plaintiff maintained her office, are located in Fort Worth.  Thus, it is clear that the Fort Worth Division has a strong local interest in deciding this case.  Plaintiff argues that because one of Defendant's other business divisions has a facility in Grand Prairie, Texas, which is located within the Dallas Division, the residents of the Dallas Division "have an interest in litigation in which the employment practices of one of its largest corporate citizens is at issue."  However, because the Grand Prairie facility has no connection to this dispute, the local interest of the Dallas Division is less than that of the Fort Worth Division.  *See Ternium*, 2009 WL 464953, at *5.  That elected officials representing areas within the Dallas Division may be called as witnesses does not override the public interest that the communities within the Fort Worth Division have in deciding this conflict.  Thus, the Court finds that this factor weighs in favor of transfer.

## Conclusion

Having found that the third private interest factor weighs against transfer, the second public interest factor weighs in favor of transfer, and the other private and public interest factors are neutral, the Court holds that Defendant has not met its significant burden of showing that the Fort Worth Division of this district is a clearly more convenient venue.  Defendant's Motion to Transfer Venue is therefore **DENIED**.

**SO ORDERED**.

January 18, 2011.

_____
**BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS**